# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON LEWIS AVERY, SR., | 1:07-cv-01175-OWW-WMW (PC) |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| DIRECTOR OF C.D.C.R., et. al., | (Doc. 2) |
| Defendants. | |

**I.  SCREENING ORDER**

Shannon Lewis Avery, Sr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis. Plaintiff filed his Complaint originally in the Northern District, but was transferred to this Court on August 13, 2007. (Docs. 1, 2.)

**A.  Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or

appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

**B.  Summary of Plaintiff's Complaint**

Plaintiff is a state prisoner at Avenal State Prison ("ASP") in Avenal, California – where the acts he complains of occurred. Plaintiff names the following defendants: John or Jane Doe, Director of C.D.C.R.; G. Gonzales; J. Amaya; J. Ramos; E. Alfaro; Jane McGraw; S.K. Pennywell; B.G. Summers; Kathy Mendoza-Powers; P. Kaur; S. Suryadevara; and E. Lu. Plaintiff seeks injunctive relief and monetary damages.

Plaintiff delineates a variety of claims for relief he seeks against each of the named defendants. (Doc. 2, pp. 53-61.)

Plaintiff alleges that, he was subjected to cruel and unusual punishment and suffered retaliation because of his activities of filing inmate grievances for a number of issues under the Americans with Disabilities Act ("A.D.A.").

Plaintiff states some cognizable claims and may be able to amend to correct deficiencies in his pleading so as to state additional cognizable claims. Thus, he is being given the applicable standards based on his delineated claims for relief and leave to file a first amended complaint.

///

2

### C. Pleading Requirements

#### 1. *Federal Rule of Civil Procedure 8(a)*

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Plaintiff is encouraged, should he choose to file a first amended complaint, to keep his factual allegations brief and to the point.

#### 2. *Federal Rule of Civil Procedure 18(a)*

"Fed.R.Civ.P. 18(a) provides that '[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against

Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

It appears to the Court that Plaintiff is attempting to join a number of unrelated claims and defendants this action. Plaintiff's allegations against Defendants Alfaro, Gonzales, Amaya, and Pennywell appear sufficiently related to proceed in this action. However, all of Plaintiff's allegations against the other defendants do not appear related to his allegations against Defendants Alfaro, Gonzales, Amaya, and Pennywell such that all other allegations violate Rule 18(a). Plaintiff may attempt to clarify which, if any, of his other claims are sufficiently related to remain in this action in any first amended complaint that he might choose to file. However, Plaintiff is advised that if he chooses to file a first amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

### 3. *Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th

4

Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Further, Plaintiff should clarify which defendant(s) he feels are responsible for any violation(s) of his constitutional rights, as his complaint must put each defendant on notice of Plaintiff's claims against him or her, and their factual basis. See Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004).

To the extent that Plaintiff seeks to hold Defendants E. Alfaro and S.K. Pennywell liable based on their supervisory positions, he is advised that supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993). The sufficiency of Plaintiff's allegations against Defendants E. Alfaro and S.K. Pennywell will be addressed under the discussion of his claims herein below.

    **4.** *Exhibits*

The Complaint is one hundred four (104) pages long. Seventy-three (73) pages of the Complaint contain Plaintiff's factual allegations, all other pages are exhibits.

Plaintiff is advised that the Court is not a repository for the parties' evidence. Originals, or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) need not be

5

submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the Court). At this point, the submission of evidence is premature as Plaintiff is only required to state a prima facie claim for relief. Thus, in amending his complaint, Plaintiff would do well to simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Plaintiff's allegations generally refer the court to his exhibits. If Plaintiff attaches exhibits to his amended complaint, each exhibit must be specifically referenced. Fed. R. Civ. Pro. 10(c). For example, Plaintiff must state "see Exhibit A" or something similar in order to direct the Court to the specific exhibit Plaintiff is referencing. Further, if the exhibit consists of more than one page, Plaintiff must reference the specific page of the exhibit (i.e. "See Exhibit A, page 3"). Finally, the Court reminds Plaintiff that the Court must assume that Plaintiff's factual allegations are true. Therefore, it is generally unnecessary for Plaintiff to submit exhibits in support of the allegations in a complaint.

### D. Claims for Relief

#### 1. Retaliation

Plaintiff alleges that Defendants G. Gonzales, J. Amaya, and E. Alfaro retaliated against him for filing inmate grievances. (Doc. 2, pp. 53, 54, 55, 56, 57, 58.)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d

6

1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff alleges that because he filed inmate grievances, Defendants G. Gonzales and J. Amaya retaliated against him by, among other things, denying or delaying Plaintiff's receipt of his pain medication so as to cause him to suffer pain, which caused his blood pressure to rise, which caused him to suffer further pain and headaches and conditions so as to necessitate medical care. Plaintiff alleges that Defendant E. Alfaro was aware of and failed to act to prevent the retaliatory actions by Defendants G. Gonzales and J. Amaya. Hansen, 885 F.2d at 646; Taylor, 880 F.2d at 1045. This states cognizable retaliation claims against Defendants G.

Gonzales, J. Amaya, and E. Alfaro.

### 2. Eighth Amendment

#### a. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that the above conduct by Defendants G. Gonzales, J. Amaya, and E. Alfaro constituted deliberate indifference to his serious medical needs.

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (*quoting* Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Estelle, 429 U.S. at 104-05; Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988). Deliberate indifference can also be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (*per curiam*); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*).

Plaintiff's allegations show that Defendants G. Gonzales and J. Amaya knew that Plaintiff had a prescription to receive pain medication at 6:30 a.m. and repeatedly kept Plaintiff from receiving it, despite allowing other prisoners in the same unit to receive their 6:30 a.m. medications. "No other correctional staff stopped plaintiff from getting plaintiff's medication. Except when working with the defendants J. Amaya and G. Gonzales." (Doc. 2, pg. 24.) Plaintiff alleges that he has a spine condition that causes his pain to be severe when he wakes up in the morning, and that not having his pain medication on time always caused his blood pressure to be so high that his blood pressure medicine alone would not bring down his blood pressure. He needed the pain medication as well to bring down his blood pressure. When he did not get his pain medication on time, his blood pressure would rise and cause bad headaches and dizziness which would in turn cause him to sustain further injuries when he would stumble and fall. This states a cognizable claim against Defendants G. Gonzales and J. Amaya for being deliberately indifferent to his serious medical needs.

However, Plaintiff fails to state any factual allegations to show that Defendant E. Alfaro was deliberately indifferent to Plaintiff's serious medical needs, or was aware of and failed to act to prevent these actions by Defendants G. Gonzales and J. Amaya. Hansen, 885 F.2d at 646; Taylor, 880 F.2d at 1045. Thus, Plaintiff fails to state a cognizable claim against Defendant E. Alfaro for deliberate indifference to his serious medical needs.

### b. Cruel & Unusual Punishment/Failure to Protect

Plaintiff alleges that Defendants G. Gonzales, J. Amaya, and E. Alfaro subjected Plaintiff to cruel and unusual punishment by placing him at risk of serious harm.

One who makes a claim of cruel and unusual punishment must show that the state has created risk or inflicted pain pointlessly. "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." (See Johnson v. Phelan, 69 F.3d 144, 147 (1995) citing: Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotations omitted) see also Rhodes v. Chapman, 452 U.S. 337 (1981); Wilson v. Seiter 501 U.S. 294, 289-300 (1991); Helling v. McKinney 509 U.S. 25 (1993). Plaintiff has not stated any allegations to show that Defendants G. Gonzales, J. Amaya,

1  and/or E. Alfaro inflicted pain pointlessly. However, he does allege that they created a risk to his
2  safety.
3       Prison officials have a duty to take reasonable steps to protect inmates from physical
4  abuse. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hoptowit v. Ray, 682 F.2d 1237, 1250-51
5  (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison
6  officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer, at
7  834. The question under the Eighth Amendment is whether prison officials, acting with
8  deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to
9  his future health ... .'" Farmer, 511 U.S. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35
10 (1993)). The Supreme Court has explained that "deliberate indifference entails something more
11 than mere negligence ... [but] something less than acts or omissions for the very purpose of
12 causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court
13 defined this "deliberate indifference" standard as equal to "recklessness," in which "a person
14 disregards a risk of harm of which he is aware." Id. at 836-37.
15      The deliberate indifference standard involves both an objective and a subjective prong.
16 First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834.
17 Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate
18 health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).
19 To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in
20 fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S.
21 at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).
22      The Supreme Court has stated that a remedy for unsafe conditions need not await a tragic
23 event. Where a risk/injury has yet to occur, the plaintiff's burden would be to prove that his
24 future health/safety is unreasonably endangered, "that it is contrary to current standards of
25 decency for anyone to be so exposed against his will, and that prison officials are deliberately
26 indifferent to his plight." Helling, 509 U.S. at 33-35.
27      Further, Eighth Amendment claims have been correctly rejected where a prisoner had not
28 been retaliated against *and* had not alleged *any* basis to infer that the defendant was aware his

actions had exposed plaintiff to a substantial risk of serious harm. Morgan v. MacDonald, 41 F.3d 1291, 1293-94 (9th Cir. 1994) (emphasis added) (prisoner alleged that the director stated that if prisoner's Fair Labor Standards Act claim was successful, inmate co-workers would have to be fired, but he failed to address both the objective prong (that he had been retaliated against by other inmate co-workers, or that there was a substantial risk of serious harm to his future health/safety as a result of the statement), and the subjective prong (any basis to infer that the director was aware that his statement exposed Morgan to a substantial risk of serious harm).)

Thus, in order to state a cognizable claim against prison officials for failure to provide for a prisoner's safety/protection, a prisoner must allege (and eventually prove): (1) a sufficiently serious risk of harm (either current or future); (2) that was caused by the defendant(s); and (3) that the defendant(s) knew that his/her action(s) exposed the prisoner to that serious risk of harm.

Plaintiff alleges that he is the ADA prisoner representative and that he approached Defendant E. Alfaro regarding ADA considerations of hot water in the showers for more than five minutes. Defendant E. Alfaro told Plaintiff not to bring up the issue. Plaintiff responded that he would bring up this and many more ADA violations. E. Alfaro had the black MAC representative talk with Plaintiff about not filing ADA paperwork. On a later date, a group prisoners approached Plaintiff and raised issues regarding closed-captioning on both televisions in their unit. Defendants J. Amaya and G. Gonzales watched as other prisoners subsequently threatened to harm Plaintiff if closed-captions appeared on the televisions. Later that morning, Defendant J. Amaya called Plaintiff to the podium and told him to go see Defendant E. Alfaro in the support office. Plaintiff went and Defendant E. Alfaro said he was going to interview Plaintiff over the ADA issue. Plaintiff told Defendant E. Alfaro that the request for ADA accommodation was withdrawn. Defendant E. Alfaro asked why. Plaintiff advised Defendant E. Alfaro that Defendant J. Amaya had told the regular prison population that Plaintiff had requested close-captioning such that Plaintiff's life had been threatened and he would be harmed if close-captioning appeared on the televisions. When Plaintiff left the office, Defendant J. Amaya called Plaintiff to the podium and told him if he were to bring up any more ADA issues, Defendant J. Amaya would take it out on the regular population. Shortly after these events,

Plaintiff was called to a MAC meeting and complied when directed to bring a list of A.D.A. issues to the support office. Subsequently, close-captioning was placed on both televisions in their unit ("#640") and another unit ("#650"). A while later, Plaintiff was warned that prisoners from the other unit were coming over to harm Plaintiff. Defendants J. Amaya and G. Gonzales left the doors of #640 open for the #650 prisoners to come in and attack Plaintiff. Plaintiff asked Defendant J. Amaya why closed-captions appeared on the televisions and received the response that Plaintiff had been told not to bring up any more A.D.A. issues. Defendants J. Amaya and G. Gonzales watched as prisoners from #650 came into the #640, and prisoners from #640 stepped between to protect Plaintiff. Defendants J. Amaya and G. Gonzales refused to remove the closed-captioning from the televisions, and Defendant E. Alfaro refused to see Plaintiff until convinced to do so by the black MAC representative. The closed-captioning remained on the televisions a while longer and more prisoners from #650 came to get into #640, but were stopped by #640 prisoners while Defendants J. Amaya and G. Gonzales just watched. The prisoners from #650 yelled threats at Plaintiff as they returned to their unit. The next afternoon, Defendant G. Gonzales told Plaintiff to pack his property as he was being moved to #650. Defendant G. Gonzales knew that Plaintiff was on "heat medication" and it was over 100 degrees outside, but Defendant G. Gonzales forced Plaintiff outside where he found the door to #650, and that back into #640 locked with no one answering his knocks and cries for help such that he was forced to remain outside in the sun for over forty minutes which caused him to have to be taken to the emergency room with his blood pressure over 163/106 and 171/111, and experiencing a heat stroke.

      Thus, Plaintiff has stated cognizable claims against Defendants E. Alfaro, J. Amaya, and G. Gonzales for failing to provide for his safety/protection as he states facts to show: (1) a sufficiently serious risk of harm; (2) that was caused by the defendant(s); and (3) that the defendant(s) knew that his/her action(s) exposed the prisoner to that serious risk of harm.

### 3. Inmate Appeals

      Plaintiff's only allegations against S.K. Pennywell relate to his involvement in the processing, and reviewing of Plaintiff's 602 inmate appeals.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals,

Plaintiff fails, and is unable to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals against S. K. Pennywell. All such claims are subject to dismissal.

### 4. First Amendment

Plaintiff claims that Defendant J. Amaya infringed on his rights under the First Amendment. (Doc. 2, pg. 55.) All of Plaintiff factual allegations against Defendant J. Amaya were previously discussed herein. The Court is unable to ascertain what First Amendment rights he feels Defendant J. Amaya violated. Thus, other than as previously addressed, Plaintiff fails to state any cognizable claims against Defendant J. Amaya for violation of his rights under the First Amendment.

## II. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Complaint is dismissed, with leave to file an amended complaint within thirty days. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in any first amended complaint he files how the conditions complained of have resulted in a deprivation of his constitutional rights. See <u>Ellis v. Cassidy</u>, 625 F.2d 227 (9th Cir. 1980). A first amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. <u>Hydrick v. Hunter</u>, 500 F.3d 978, 987-88 (9th Cir. 2007). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

Plaintiff is further advised that a first amended complaint supercedes the original complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814

F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File a first amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file a first amended complaint and wishes to proceed only on the claims identified by the Court as viable/cognizable in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

**Dated:   April 30, 2009**                   /s/  **William M. Wunderlich**
                                              UNITED STATES MAGISTRATE JUDGE