1

2

3

4

5

6

7  **UNITED STATES DISTRICT COURT**

8  EASTERN DISTRICT OF CALIFORNIA

9

10  SHANNON L. AVERY, SR.,                1:07-cv-01175-OWW-GSA-PC

        Plaintiff,                       FINDINGS AND RECOMMENDATIONS,
11                                        RECOMMENDING THAT THIS ACTION PROCEED
        v.                               ON THE SECOND AMENDED COMPLAINT
12                                        AGAINST DEFENDANT AMAYA FOR
   CDCR DIRECTOR, et al.,                 RETALIATION, DEFENDANT GONZALES FOR
13                                        INADEQUATE MEDICAL CARE AND FAILURE TO
                                          PROTECT, DEFENDANT BASCOM FOR
14      Defendants.                       EXCESSIVE FORCE, AND ON PLAINTIFF'S
                                          RELATED STATE TORT CLAIMS, AND THAT ALL
15                                        OTHER CLAIMS AND DEFENDANTS BE
                                          DISMISSED FOR FAILURE TO STATE A CLAIM
16                                        (Doc. 69.)

17                                        OBJECTIONS, IF ANY, DUE IN 30 DAYS

18  _____/

19  **I.     BACKGROUND**

20      Shannon L. Avery, Sr. ("Plaintiff") is a former state prisoner proceeding pro se and in forma

21  pauperis with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint

22  commencing this action on May 16, 2007 in the Northern District of California, and the case was

23  transferred to the Eastern District of California on August 13, 2007.  (Docs. 1, 2.)  The Court

24  screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and entered an order on May 1, 2009

25  requiring Plaintiff to either file an amended complaint or notify the Court that he wished to proceed

26  only on the claims found to be cognizable by the Court.  (Doc. 46.)  On October 27, 2009, Plaintiff

27  submitted the First Amended Complaint.  (Doc. 60.)  On April 20, 2010, the Court dismissed the

28  First Amended Complaint for Plaintiff's failure to comply with the Court's May 1, 2009 order, with

1

1 leave to file a Second Amended Complaint.  (Doc. 63.)  On July 20, 2010, Plaintiff filed the Second

2 Amended Complaint, which is now before the Court for screening.  (Doc. 69.)

3 **II.   SCREENING REQUIREMENT**

4       The court is required to screen complaints brought by prisoners seeking relief against a

5 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

6 court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

7 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

8 monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

9 "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

10 dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

11 claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

12       A complaint must contain "a short and plain statement of the claim showing that the pleader

13 is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

14 "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

15 do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v.

16 Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are

17 taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores,

18 Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

19       To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations

20 sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret

21 Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of

22 meeting this plausibility standard.  Id.

23 **III.   SUMMARY OF SECOND AMENDED COMPLAINT**

24       Plaintiff is presently out of custody and resides in Oakland, California.  At the time of the

25 events at issue in the Second Amended Complaint, Plaintiff was incarcerated at Avenal State Prison

26 ("ASP") in Avenal, California.  In the Second Amended Complaint, Plaintiff names as defendants

27 Suzan L. Hubbard (Director, CDCR), Kathy Mendoza-Powers (Warden, ASP), R. Ndoh (Associate

28 Warden, ASP), Captain S. K. Pennywell, E. Lu (Nurse), Correctional Officer ("C/O") Bascom, P.

1   Kaur (Nurse), Dr. Suryadevara (CMO), C/O J. Amaya, C/O G. Gonzales, Sergeant E. Alfaro, A.

2   McGraw (RN), Sergeant J. Ramos, E. Weinstein, and H. Hill ("Defendants").  Plaintiff requests

3   monetary damages, declaratory relief, and injunctive relief.  Plaintiff recounts several events

4   beginning in May 2006, as follows.

5           *(1)       Repercussions for Bringing ADA Issues*

6           Plaintiff was the ADA (Americans with Disabilities Act) representative for the Mens

7   Advisory Council at ASP.  On May 9, 2006, Plaintiff complained to Sgt. E. Alfaro about ADA issues

8   concerning the hot water only running for five minutes.  Sgt. Alfaro told Plaintiff, "You don't want

9   to bring those issues up."  Plaintiff said he would continue to bring up such issues.  Approximately

10  thirty minutes later, a representative of the Black Mens Advisory Council approached Plaintiff and

11  said that Sgt. Alfaro wanted him to talk to Plaintiff about the hot water issue.

12          On May 10, 2006, a group of inmates approached Plaintiff about his ADA-1824 form request

13  concerning issues about television closed-captioning and sports being shown on both  televisions.

14  C/O J. Amaya and C/O G. Gonzales watched as the inmates threatened Plaintiff by saying that if

15  closed-captioning appeared on the televisions, Plaintiff would be hurt.  C/O Amaya sent Plaintiff to

16  talk to Sgt. Alfaro in the support office about the ADA requests.  Plaintiff told Sgt. Alfaro he wanted

17  to withdraw his ADA requests, explaining that C/O Amaya had told the inmates in Unit 640 about

18  Plaintiff's ADA-1824 form, which is supposed to be a confidential document, causing Plaintiff's life

19  to be threatened.  Sgt. Alfaro told Plaintiff he wouldn't have granted the ADA requests anyway, and

20  that if Plaintiff wanted to submit an ADA form again, he should consult with the inmate population

21  first.  Sgt. Alfaro said he would withdraw Plaintiff's ADA requests, and Plaintiff left the support

22  office.  When Plaintiff entered Unit 640, C/O Amaya told Plaintiff, "If you bring any more ADA

23  issues, I'll take it out on the general population."  Plaintiff continued to bring up ADA issues

24  anyway.

25          Defendants Captain Pennywell, Sgt. Alfaro, C/O Amaya and C/O Gonzales manipulated

26  inmates against Plaintiff, just as Amaya stated he would.  Captain Pennywell was in charge of

27  Facility VI when the events occurred.  Pennywell permitted and encouraged inmates to attack

28  Plaintiff when Pennywell turned on both televisions in Units 640 and 650.

1          ***(2)        Move from Unit 640 to Unit 650***

2          On May 11, 2006, C/O G. Gonzales told Plaintiff to pack his property and move from Unit

3    640 to Unit 650.  The prisoners who wanted to harm Plaintiff were in Unit 650, which is called the

4    Gladiator Dorm.  Plaintiff asked C/O Gonzales more than once why he was being moved, and

5    Gonzales responded, "Hurry and pack your stuff before count."  Plaintiff told C/O Gonzales he was

6    taking heat medication, and that there was a heat alert because the temperature was over 100 degrees.

7    C/O Gonzales opened the door, said "Let's go," and locked the door behind Plaintiff.  Plaintiff

8    became dizzy from the heat and started yelling for help.  No one came to the Unit 650 door until

9    forty minutes later.  Plaintiff was taken to the emergency room with heat stroke and high blood

10   pressure.

11         ***(3)        Staring at Plaintiff***

12         On August 18, 2009, as Plaintiff exited the chow hall, Sgt. J. Ramos began staring at Plaintiff

13   and continued to stare, turning in Plaintiff's direction, until Plaintiff arrived at Unit 640.  This

14   bothered Plaintiff.

15         ***(4)        Medical Chrono, Fall on Pavement, and Drop from Gurney***

16         Plaintiff had a medical chrono which allowed him to pick up his medication at 6:30 a.m.  On

17   August 19, 2006, C/O G. Gonzales refused to honor Plaintiff's chrono.  When Plaintiff told C/O

18   Gonzales he needed to get his medication, Gonzales said, "It doesn't matter, this is the Captain's

19   order."  Thirty minutes later, Plaintiff was released and barely made it in time to get the medication.

20   Again on August 20, 2006, C/O Gonzales refused to honor Plaintiff's chrono.  Plaintiff begged, but

21   Gonzales said "No, you are not going anywhere!"  C/O Gonzales had released all the other

22   medication prisoners but had stopped Plaintiff and locked the Unit 640 doors.  Forty minutes later,

23   C/O Gonzales released Plaintiff.  Plaintiff walked through the doors and became dizzy, fell in a hole

24   in the pavement, and hit his head, injuring his neck and back.  Plaintiff was in severe pain.  Medical

25   staff and an ambulance were called, and Plaintiff was taken to the emergency room at Unit 390.  As

26   Plaintiff was being pulled out of the ambulance, strapped on the gurney and in severe pain, someone

27   lifted up the bottom end of the gurney and dropped it to the ground.  Plaintiff yelled very loudly due

28   to the impact.  A loud voice said, "Get up, you're not hurt."  Plaintiff was on the gurney, halfway out

1  of the ambulance, with the bottom end of the gurney on the ground.  C/O Bascom bent down, picked

2  up the end of the gurney, lifted it up in the air, and dropped Plaintiff again, yelling, "Get up, you're

3  not hurt!"  Plaintiff yelled over and over for him to stop and called for help.  Plaintiff could see

4  prison staff standing around and watching, but no one intervened.  C/O Bascom picked up the end

5  of the gurney again and dropped Plaintiff again, yelling, "Get up, you're not hurt!"  C/O Bascom

6  dropped Plaintiff five times before Plaintiff lost consciousness.

7       In the emergency room, Plaintiff recognized an African-American nurse as one of the persons

8  who stood and watched as Bascom dropped Plaintiff.  Plaintiff asked the nurse her name and she

9  replied, "McGraw, RN McGraw."  Plaintiff asked RN McGraw for water, but she rudely refused,

10  telling Plaintiff he had to sit up first.

11       Plaintiff also alleges that on several days, Sgt. J. Ramos and C/O J. Amaya refused to honor

12  Plaintiff's medical chrono to pick up medication at 6:30 a.m.

13       *(5)*       ***Denial of Medication***

14       Plaintiff alleges that Associate Warden Ndoh, Captain Pennywell, C/O Bascom, Sgt. Alfaro,

15  Sgt. Ramos, H. Hill, C/O Gonzales, and C/O Amaya denied him medication, causing Plaintiff to

16  have a seizure and causing his blood pressure to rise to 200/111.

17       *(6)*       ***Abrupt Discontinuation of Medication***

18       Plaintiff alleges that Dr. Suryadevara conspired to intentionally stop Plaintiff's medication,

19  Elavil (amitriptyline), for twenty-one days, despite warnings clearly stating Do not stop abruptly.

20  Each time Physician's Assistant R. Gonzales would re-order the Elavil, Dr. Suryadevara would have

21  it stopped.  This caused Plaintiff severe pain, disorientation, stress, humiliation, terror, and the

22  possibility of a stroke.

23  **IV.       PLAINTIFF'S CLAIMS**

24       The Civil Rights Act under which this action was filed provides:

25       Every person who, under color of [state law] . . . subjects, or causes
    to be subjected, any citizen of the United States . . . to the deprivation
26       of any rights, privileges, or immunities secured by the Constitution .
    . . shall be liable to the party injured in an action at law, suit in equity,
27       or other proper proceeding for redress.

///

28

1  42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal

2  Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)

3  (internal quotations omitted).  "To the extent that the violation of a state law amounts to the

4  deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution,

5  Section 1983 offers no redress." Id.

6       **A.       Supervisory Liability/Personal Participation**

7       Defendants Suzan L. Hubbard, Kathy Mendoza-Powers, and R. Ndoh hold supervisory

8  positions in the CDCR and/or at ASP.  To the extent that Plaintiff seeks to hold any of the

9  Defendants liable in their supervisory capacity on the theory of respondeat superior, Plaintiff is

10  unable to do so.  Under section 1983, Plaintiff must demonstrate that each defendant *personally*

11  participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002)

12  (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her own individual

13  actions, violated Plaintiff's constitutional rights. Iqbal, 129 S.Ct. at 1948-49.  Liability may not be

14  imposed on supervisory personnel under section 1983 on the theory of respondeat superior, as each

15  defendant is only liable for his or her own misconduct. Id.; Ewing v. City of Stockton, 588 F.3d

16  1218, 1235 (9th Cir. 2009).  A supervisor may be held liable only if he or she "participated in or

17  directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List,

18  880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, No. 09-55233, 2011 WL 477094, at *4-5

19  (9th Cir. Feb. 11, 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v.

20  Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick,

21  126 F.3d 1189, 1204 (9th Cir. 1997).  Therefore, to the extent that Plaintiff seeks to impose liability

22  upon any of the Defendants in their supervisory capacity, Plaintiff fails to state a claim.

23       **B.       Conspiracy**

24       In the context of conspiracy claims brought pursuant to section 1983, a complaint must

25  "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v.

26  County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police

27  Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or

28  ///

1   acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v.

2   State of California, 497 F.2d 197, 200 (9th Cir. 1974).

3         A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting

4   of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001)

5   (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.

6   1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d

7   1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121,

8   1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact

9   details of the plan, but each participant must at least share the common objective of the conspiracy.'"

10  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

11        Plaintiff alleges that Defendants conspired to violate his rights.  However, Plaintiff has not

12  alleged any facts supporting the allegation that Defendants entered into an agreement or had a

13  meeting of the minds to violate Plaintiff's constitutional rights.  Therefore, Plaintiff fails to state a

14  claim for conspiracy.

15        **C.     Retaliation**

16        Plaintiff alleges he was retaliated against by some of the Defendants for bringing up ADA

17  issues and filing ADA-1984 forms complaining about possible ADA violations.  "Within the prison

18  context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion

19  that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

20  protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

21  rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v.

22  Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

23        Plaintiff alleges that defendant C/O J. Amaya informed a group of inmates that Plaintiff had

24  filed an ADA-1984 form requesting closed-captioning on the televisions, resulting in inmates

25  approaching Plaintiff and telling him that he would be hurt if closed-captioning appeared on the

26  televisions.  Plaintiff also alleges that C/O Amaya told Plaintiff, "If you bring any more ADA issues,

27  I'll take it out on the general population," which was a threat to manipulate other inmates against

28  Plaintiff.  Under these facts, Plaintiff states a cognizable claim for retaliation against C/O Amaya.

1  However, Plaintiff does not allege facts demonstrating that any other defendant took an adverse

2  action against him because of protected conduct.

3    **D.    Verbal Harassment**

4    Plaintiff alleges that some of the defendants harassed or threatened him.  Mere verbal

5  harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus,

6  does not give rise to a claim for relief under 42 U.S.C. § 1983.  Oltarzewski v. Ruggiero, 830 F.2d

7  136, 139 (9th Cir. 1987).  Also, threats do not rise to the level of a constitutional violation.  Gaut v.

8  Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Therefore, Plaintiff fails to state a cognizable claim against

9  any of the defendants for verbal harassment or threats.

10    **E.    Eighth Amendment - Failure to Protect**

11    Plaintiff claims that defendant C/O J. Amaya endangered Plaintiff's life when he told other

12  inmates that Plaintiff had filed an ADA-1984 form requesting closed-captioning on the televisions.

13  Plaintiff also claims that defendant C/O G. Gonzales intentionally placed Plaintiff's life in danger

14  when he transferred him from Unit 640 to Unit 650, which is called the Gladiator Dorm, where

15  prisoners who wanted to harm Plaintiff were housed.  Plaintiff also alleges that defendant Captain

16  Pennywell actively permitted and encouraged the inmate general population to attack Plaintiff, when

17  Pennywell turned on both televisions in Unit 640 and Unit 650.

18    Although prison conditions may be restrictive and harsh, prison officials must provide

19  prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v.

20  Brennan, 511 U.S. 825, 832 (1994); Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986);

21  Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming

22  from unsafe conditions of confinement, prison officials may be held liable only if they acted with

23  "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128

24  (9th Cir. 1998).  Thus, a prison official may be held liable under the Eighth Amendment for denying

25  humane conditions of confinement only if he knows that inmates face a substantial risk of harm and

26  disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.

27    Plaintiff states a cognizable claim against defendant C/O Gonzales for placing him in danger

28  by sending him outside alone in 100-degree heat, knowing that there was a heat alert and that

8

1    Plaintiff was taking heat medication, causing Plaintiff to end up at the emergency room with heat

2    stroke. With respect to defendant Amaya, Plaintiff fails to allege facts that Amaya acted with

3    deliberate indifference, while knowing that Plaintiff faced a substantial risk of serious harm.  With

4    respect to defendant Pennywell, Plaintiff fails to allege facts demonstrating that Pennywell knew she

5    was placing Plaintiff in danger by turning on the televisions.  Plaintiff also alleges that some of the

6    other defendants failed to protect him.  However, for those allegations he uses vague and conclusory

7    language which does not suffice to state a claim.  While a plaintiff's allegations are taken as true,

8    courts "are not required to indulge unwarranted inferences," Wal-Mart Stores, Inc., 572 F.3d at 681.

9        **F.        Eighth Amendment – Failure to Intercede**

10    Plaintiff alleges that defendant RN McGraw stood by and watched defendant C/O Bascom

11    intentionally drop Plaintiff to the ground multiple times and did nothing to stop it or prevent

12    Plaintiff's injuries.

13    Although prison conditions may be restrictive and harsh, prison officials must provide

14    prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.; Toussaint,

15    801 F.2d at 1107; Hoptowit, 682 F.2d at 1246.  Where a prisoner alleges injuries stemming from

16    unsafe conditions of confinement, prison officials may be held liable only if they acted with

17    "deliberate indifference to a substantial risk of serious harm."  Frost, 152 F.3d at 1128.  Thus, a

18    prison official may be held liable under the Eighth Amendment for denying humane conditions of

19    confinement only if he knows that inmates face a substantial risk of harm and disregards that risk

20    by failing to take reasonable measures to abate it.  Id. at 837-45.  An officer can be held liable for

21    failing to intercede only if he had a "realistic  opportunity" to intercede.  Cunningham v. Gates, 229

22    F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

23    Based on the Court's review, the Ninth Circuit has never extended the duty to intervene in

24    an altercation between a prisoner and law enforcement or correctional officers or other inmates to

25    those who are not law enforcement or correctional officers.  Therefore, RN McGraw had no duty to

26    intervene in the alleged altercation between Plaintiff and defendant C/O Bascom.  Thus, Plaintiff

27    fails to state a cognizable claim against defendant RN McGraw for failure to intercede and protect

28    him.

## G.  Eighth Amendment - Medical Care

Plaintiff alleges that defendant C/O G. Gonzales refused to honor Plaintiff's medical chrono which allowed Plaintiff to pick up his medication at 6:30 a.m., causing him to become dizzy and fall on the pavement, injuring his neck and back.  Plaintiff also alleges that on several days, defendants Sgt. Ramos and C/O Amaya refused to honor his chrono to pick up medication at 6:30 a.m.  Plaintiff also alleges that defendants Ndoh, Pennywell, Bascom, Alfaro, Ramos, Hill, Gonzales, and Amaya denied him medication, causing Plaintiff to have a seizure and causing his blood pressure to rise to 200/111.  Further, Plaintiff alleges that Dr. Suryadevara abruptly stopped Plaintiff's medication, Elavil (amitriptyline), for twenty-one days, despite warnings clearly stating Do not stop abruptly, causing Plaintiff severe pain, disorientation, stress, humiliation, terror, and the possibility of a stroke.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin at 1060 (internal quotations omitted)).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

///

1    Plaintiff states a cognizable Eighth Amendment medical claim against defendant G. Gonzales

2    for refusing to honor Plaintiff's medical chrono, causing him to become dizzy, fall, and injure

3    himself.  However, Plaintiff has not stated a cognizable Eighth Amendment medical claim against

4    any other defendant.  Plaintiff fails to make allegations against any other defendant demonstrating

5    a purposeful act or failure to respond to Plaintiff's pain or possible medical need, with harm caused

6    by the indifference.

7         **H.       Eighth Amendment - Excessive Force**

8         "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

9    Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v.

10   McMillan, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . .

11   . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks

12   and citations omitted).  The malicious and sadistic use of force to cause harm always violates

13   contemporary standards of decency, regardless of whether or not significant injury is evident.  Id.

14   at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force

15   standard examines de minimis uses of force, not de minimis injuries)).  However, not "every

16   malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9.  "The Eighth

17   Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional

18   recognition de minimis uses of physical force, provided that the use of force is not of a sort

19   'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations

20   omitted).

21        "[W]henever prison officials stand accused of using excessive physical force in violation of

22   the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied

23   in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

24   Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper

25   to evaluate the need for application of force, the relationship between that need and the amount of

26   force used, the threat reasonably perceived by the responsible officials, and any efforts made to

27   temper the severity of a forceful response." Id. (internal quotation marks and citations omitted).

28   ///

11

1   "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end

2   it." Id.

3        Plaintiff states a cognizable claim for excessive force against defendant C/O Bascom for

4   intentionally dropping him to the ground five times when Plaintiff was on the gurney.  However,

5   Plaintiff fails to state a cognizable claim for excessive force against any of the other defendants.

6        **I.        Staring at Plaintiff and Withholding Water**

7        Plaintiff alleges that defendant C/O J. Ramos began staring at Plaintiff as Plaintiff exited the

8   chow hall, and continued to stare, turning in Plaintiff's direction, until Plaintiff arrived at Unit 640,

9   which bothered Plaintiff.  Plaintiff also alleges that defendant RN McGraw rudely refused his request

10  for water when Plaintiff was in the emergency room, telling him that he had to sit up first.

11       These allegations do not rise to the level of a Constitutional violation.  Therefore, Plaintiff

12  fails to state a claim against defendant Ramos for staring at Plaintiff, or against defendant McGraw

13  for refusing Plaintiff's request for water.

14       **J.        State Law Claims**

15       ***Tort Claims***

16       Plaintiff brings state tort claims against Defendants for negligence, intentional infliction of

17  emotional distress, assault, battery, and failure to train and supervise employees.  Plaintiff is

18  informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other

19  state law is not sufficient to state a claim for relief under § 1983.  To state a claim under § 1983,

20  there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S.

21  693 (1976).  Although the court may exercise supplemental jurisdiction over state law claims,

22  Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.

23       Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

24  jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action

25  within such original jurisdiction that they form part of the same case or controversy under Article

26  III [of the Constitution]," with specific exceptions.  "Pendent jurisdiction over state claims exists

27  when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a

28  'common nucleus of operative fact between the state and federal claims.' " Brady v. Brown, 51 F.3d

1   810, 816 (9th Cir. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir.1991)).

2   "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law

3   claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir.

4   1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . .

5   the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S.

6   715, 726 (1966).

7          In this instance, the Court has found cognizable § 1983 claims in the Second Amended

8   Complaint against defendants Amaya, Gonzales, and Bascom. Therefore, at this juncture, the Court

9   shall exercise supplemental jurisdiction over Plaintiff's state tort law claims that form part of the

10  same case or controversy as Plaintiff's cognizable federal claims.[1]

11          ***Criminal Action***

12          Plaintiff also brings a claim for mayhem against Defendants. This suggests that Plaintiff

13  seeks to bring a criminal action. "Section 1983 . . . creates a cause of action for violations of the

14  federal Constitution and laws." Sweaney, 119 F.3d at 1391 (internal quotations omitted). As a rule,

15  civil actions may be started by individuals, but criminal actions may only be started by the state and

16  not by individuals. Indeed, with limited exceptions, none which apply to §1983 actions, state and

17  federal law do not allow a private citizen to bring a criminal prosecution against another citizen.

18  Therefore, Plaintiff is unable to bring a criminal action for mayhem against any of the defendants.

19          **K.      Emotional Distress**

20          Plaintiff claims he suffered emotional distress as a result of the constitutional violations

21  against him. The Prison Litigation Reform Act provides that "[n]o Federal civil action may be

22  brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional

23  injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

24  The physical injury "need not be significant but must be more than *de minimis*." Oliver, 289 F.3d

25  at 627. The physical injury requirement applies only to claims for mental or emotional injuries and

26  does not bar claims for compensatory, nominal, or punitive damages. Id. at 630. Therefore, Plaintiff

27  ⸻

28  [1]At this stage of the proceedings, the Court makes no determination about the viability of Plaintiff's state tort claims.

1    may not pursue a federal cause of action for mental or emotional damages without a showing of

2    physical injury.

3         **L.      Declaratory and Injunctive Relief**

4         Plaintiff requests monetary, declaratory, and injunctive relief.  With regard to declaratory

5    relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a

6    matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood

7    Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve

8    a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings

9    and afford relief from the uncertainty and controversy faced by the parties." United States v.

10   Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that this action reaches trial and the

11   jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional

12   rights were violated.  A declaration that defendant violated Plaintiff's rights is unnecessary.

13        Plaintiff requests injunctive relief via medical treatment, a polygraph examination, and the

14   suspension of CDCR staff for retaliation.  The court cannot award this form of relief.  Any award

15   of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

16
17             Prospective relief in any civil action with respect to prison conditions
               shall extend no further than necessary to correct the violation of the
18             Federal right of a particular plaintiff or plaintiffs.  The court shall not
               grant or approve any prospective relief unless the court finds that such
19             relief is narrowly drawn, extends no further than necessary to correct
               the violation of the Federal right, and is the least intrusive means
20             necessary to correct the violation of the Federal right.  18 U.S.C.
               §3626(a)(1)(A).

21   The injunctions requested by Plaintiff would not remedy the past violation of Plaintiff's

22   constitutional rights and therefore are not narrowly drawn to correct the alleged past violations.

23        Also, when a prisoner seeks injunctive relief concerning the prison where he is incarcerated,

24   his claims for such relief become moot when he is no longer subjected to those conditions.  See

25   Weinstein v. Bradford, 423 U.S. 147, 148-49 (1975) (finding prisoner's due process claim to be

26   moot once he obtained a full release from prison supervision); Dilley v. Gunn, 64 F.3d 1365, 1368-

27   69 (9th Cir. 1995) (finding prisoner's suit for library access to be moot upon his transfer to another

28   prison).  Once Plaintiff was transferred or released from Avenal State Prison where the alleged

1  violations occurred, any claims for injunctive relief regarding conditions at those institutions became

2  moot.

3           For the foregoing reasons, the Court finds that this action is a damages action only.

4  **V.       CONCLUSION AND RECOMMENDATIONS**

5           For the reasons set forth above, the Court finds that Plaintiff states cognizable claims in the

6  Second Amended Complaint against defendant C/O J. Amaya for retaliation under the First

7  Amendment; against defendant C/O G. Gonzales for inadequate medical care and for failure to

8  protect Plaintiff in violation of the Eighth Amendment; and against defendant C/O Bascom for use

9  of excessive force in violation of the Eighth Amendment.  However, the Court finds that Plaintiff

10 fails to state any other claims upon which relief may be granted under § 1983.  The Court also finds

11 that this action is a damages only action, and that supplemental jurisdiction should be exercised for

12 Plaintiff's related state tort claims at this juncture.  The Court previously granted Plaintiff two

13 opportunities to amend the complaint, with guidance by the Court.

14          Plaintiff has now filed three complaints.  Based on this record and the facts set forth in the

15 Second Amended Complaint, the Court finds that further leave to amend is not warranted.  28 U.S.C.

16 § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

17          Accordingly, **IT IS HEREBY RECOMMENDED** that:

18     1.    This action proceed with the Second Amended Complaint filed on July 20, 2010, on

19           the claims found cognizable by the Court against defendant C/O J. Amaya for

20           retaliation under the First Amendment; against defendant C/O G. Gonzales for

21           inadequate medical care and for failure to protect Plaintiff, in violation of the Eighth

22           Amendment; against defendant C/O Bascom for use of excessive force in violation

23           of the Eighth Amendment, assault, and battery; and on Plaintiff's related state tort

24           claims;

25     2.    This action proceed for money damages only as relief;

26     3.    All remaining claims and defendants be dismissed based on Plaintiff's failure to state

27           a claim upon which relief may be granted under § 1983;

28  ///

4.    Plaintiff's claims for supervisory liability, conspiracy, verbal harassment, failure to intercede, due process, mayhem, for staring at Plaintiff, and for withholding water from Plaintiff, be dismissed from this action based on Plaintiff's failure to state a claim upon which relief may be granted under § 1983;

5.    Defendants Hubbard, Mendoza-Powers, Ndoh, Pennywell, Lu, Kaur, Suryadevara, Alfaro, McGraw, Ramos, Weinstein, and Hill be dismissed from this action based on Plaintiff's failure to state any claims upon which relief may be granted against them under § 1983; and

6.    This action be referred back to the Magistrate Judge for further proceedings, including initiation of service.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:    **April 14, 2011**              **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE

16